UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MICHELLE GONZALES,                                CASE NO.:
Personal Representative of the Estate of
MARTIN GONZALES, deceased

    Plaintiff,
vs.

SIERRA NEVADA CORPORATION, a foreign corporation,
and NEW FRONTIER INNOVATIONS, LLC, a foreign corporation,

    Defendants.
_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff sues the defendants and alleges:

## THE PARTIES, JURSIDICTION & VENUE

1. This is a wrongful death action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorneys fees, which lies within the diversity jurisdiction of this Court.

2. Plaintiff, MICHELLE GONZALES, is a resident of Florida and is the surviving spouse of MARTIN GONZALES. Plaintiff has filed a petition for administration and for appointment as the Personal Representative of the Estate. All other statutory survivors under Florida's Wrongful Death Act are the minor children of plaintiff Michelle Gonzales and decedent Martin Gonzales.

3. At all times material, decedent, Martin Gonzales was a citizen of the United States, a resident of the State of Florida and a member of the U.S. Armed Forces on active duty.

1

4.	At all times material, the defendant, SIERRA NEVADA CORPORATION ("SIERRA NEVADA") was and is a Nevada corporation with its principal place of business at 444 Salomon Circle Sparks, Nevada 89434.  SIERRA NEVADA  is a defense contractor that performs a large variety of defense contract missions in general, and specifically here, owns and operates U.S. registered and Federal Aviation Administration numbered civilian aircraft with U.S. national pilots, performing counter-narcotics surveillance flights in the Caribbean basin and northern coast of South America in the area of operation of and reporting to  the United States Southern Command ("USSOUTHCOM") headquartered in Miami, Florida.  SIERRA NEVADA engages in substantial and not isolated business activities in this district and the State of Florida and operates, conducts, engages in or carries on a business or business venture in the State of Florida and/or has an office or agency in the State of Florida.  SIERRA NEVADA is listed by the Florida Department of State, Division of Corporations as a foreign profit corporation authorized to do business and actively doing business in Florida.  SIERRA NEVADA is subject to the jurisdiction of this Court.

5.	At all times material, the defendant, NEW FRONTIER INNOVATIONS, LLC ("NFI") was and is a Delaware corporation with its principal place of business at 833 S. Fairfax St., Alexandria, Virginia 22314.  NFI  is a defense contractor that operates U.S. registered and Federal Aviation Administration numbered civilian aircraft with U.S. national pilots,  and also provides pilots and sensor operators to performing electronic or counter-narcotics surveillance flights on other contractors' aircraft in the Caribbean basin and northern coast of South America in the area of operation of and reporting to  the United States Southern Command ("USSOUTHCOM") headquartered in Miami, Florida.  NFI engages in substantial and not isolated business activities in this district and the State of Florida and operates, conducts, engages in or carries on a business or

business venture in the State of Florida and/or has an office or agency in the State of Florida. NFI is subject to the jurisdiction of this Court.

6. This Court has jurisdiction under 28 U.S.C. Section 1332 because the states of incorporation and principal places of business for all Defendants are in states other than Florida, the state of domicile of Plaintiff's decedent.

7. Venue is proper under 28 U.S.C. Section 1391, because:

   a. The SIERRA NEVADA defendant resides in this judicial district, has substantial and not isolated personal jurisdiction contacts in this district, and is subject to personal jurisdiction in this district at the time of the commencement of this action;
   b. Both the SIERRA NEVADA and the NFI defendants operate DOD aerial surveillance flights under DOD contracts in the area of operation of the United State Southern Command here in this district. This crash arises out of the performance of a maritime counter-narcotics aerial surveillance mission where these defendants reported to U.S. Southern Command and its Joint Inter Agency Task Force JIATF-East located in Key West, Florida also in this district.
   c. There is no satisfactory remedy available to Plaintiffs that may be more conveniently brought in a jurisdiction other than this judicial district;
   d. There is no available and adequate alternate forum which possesses jurisdiction over the whole case;
   e. All relevant factors of private interest favor this judicial district as the proper forum, and under Federal law there is a presumption against disturbing Plaintiffs' initial forum choice;
   f. Factors of public interest weigh in favor of this judicial district as the proper forum;
   g. Plaintiffs will suffer undue inconvenience or prejudice if forced to refile in another forum;
   h. Florida law applies to this cause of action arising out of this aircraft accident;
   i. All of the evidence related to this crash is located in this district or will ultimately be transmitted to the U.S. Southern Command or is otherwise available in the United States.
   j. Colombia is on a travel warning list by the U.S. State Department where terrorist groups and narco-traffickers operate, where there is risk of violence, kidnapping, hijacking and murder and is therefore not an adequate and appropriate forum among other reasons; and
   k. The U.S. Department of State documents intense internal confusion in the application of Colombian law by *Colombian tribunals* leading to conflicting opinions because there is no clear authority on precedent.

**ALLEGATIONS APPLICABLE TO ALL COUNTS**

8. SIERRA NEVADA was and is a U.S. corporation and a Department of Defense ("DOD") contractor. SIERRA NEVADA has multiple divisions, including Space Systems; Communications, Navigation, Surveillance / Air Traffic Management; Intelligence, Surveillance, Reconnaissance; Integrated Mission Systems; Information & Sensor Solutions; and Electronic Warfare / Range Instrumentation, and has been awarded DOD contracts in numerous areas and specifically in electronics surveillance with aircraft. Some of these contracts require SIERRA NEVADA to fly surveillance flights to monitor and detect aircraft, vessels and persons who are transporting illegal narcotics into the United States or from narcotics growing areas, such as Colombia, Mexico, and other countries bordering the Caribbean basin or Pacific Ocean. These specific types of contracts are known as Intelligence, Surveillance and Reconnaissance ("ISR") contracts. SIERRA NEVADA performs these ISR missions through Contractor-Owned, Contractor-Operated ("COCO") aircraft. SIERRA NEVADA performs these types of ISR contract missions, by providing the aircraft, systems, maintenance, cockpit flight crews, and back area sensor operators.

9. NFI was and is a U.S. corporation and a Department of Defense ("DOD") contractor. NFI has been awarded numerous contracts with the DOD specifically in electronics surveillance with aircraft. NFI works closely with SIERRA NEVADA as the prime contractor in teaming agreements, or is owned in whole or part by SIERRA NEVADA. Some of these contracts require NFI to fly surveillance flights to monitor and detect aircraft, vessels and persons who are transporting illegal narcotics into the United States or from narcotics growing areas, such as Colombia, Mexico, and other countries bordering the Caribbean basin or Pacific Ocean. These specific types of contracts are known as Intelligence, Surveillance and Reconnaissance ("ISR")

contracts. NFI performs these ISR missions through Contractor-Owned, Contractor-Operated ("COCO") aircraft. NFI performs these types of ISR contract missions, by providing the aircraft, systems, maintenance, cockpit flight crews, and back area sensor operators.

10.     At all times material, and on October 5, 2013 SIERRA NEVADA was performing a DOD counter-narcotics ISR contract with a SIERRA NEVADA owned aircraft, a Bombardier Dash 8, bearing U.S. FAA registry N365PH (the "Aircraft"). The Aircraft was modified for this mission and was not authorized to fly under a standard airworthiness certificate. The Aircraft was flying over the Caribbean basin on maritime patrol and near the borders of Colombia and Panama looking for suspicious illegal narcotics activity. Flights performing ISR activities typically carry a host nation rider who monitors the flight over the host nation airspace. The contract documents for this contract are located in the U.S. Both of Defendants' pilots were flight followed and in radio communication with USSOUTHCOM and JAIATF-East during this surveillance flight.

11.     The SIERRA NEVADA Dash 8 aircraft had two pilots in the cockpit, and a number of persons in the cargo area, some of whom operated the surveillance sensors and equipment. The pilots were both U.S. nationals. One pilot was employed by SIERRA NEVADA. One pilot was employed by NFI. The sensor operators were U.S. nationals. One of the persons in the back of the SIERRA NEVADA aircraft was the decedent, U.S. Air Force Master Sergeant Martin Gonzales. MSGT Gonzales' function was to escort the host nation rider, because he spoke Spanish. MSGT Gonzales did not perform technical activities or perform sensor duties on the Aircraft and did not perform any cockpit duties or flight duties. The pilots negligently and recklessly flew the aircraft into high ground at night where it crashed, broke apart and burned. A portion of the cockpit broke away and the two pilots survived. The

complete aft section of the Aircraft containing all of the sensors and equipment and remaining on-board personnel burned.  There was nothing left of the Aircraft.  There remains virtually no crash site evidence in Colombia near the Panamanian border.  At all times material, immediately before the crash and at the time of the crash, the pilots were on the flight controls and flying the Aircraft.  The crash was caused by pilot error and not the result of any hostile activity or equipment failure.  There was no government contract provision or DOD or U.S. Air Force contract requirement that the Defendants' pilots fly this Aircraft into terrain, or that would otherwise relived the pilots from the primary duty of flying the Aircraft clear of terrain.  MSGT Martin Gonzales died a result of this crash.

12. This October 5, 2013 SIERRA NEVADA flight was monitored for flight following and mission status by the Joint Interagency Task Force - East ("JIATF-East") in Key West Florida in this district.  JIATF-East is an interagency fusion center under the command of USSOUTHCOM in this district.  One of JIATF-East's focus is the interdiction of illegal narcotics smuggling.  JIATF-East maintains the technical records of the exact mission, communications logs and flight tracks and other evidence, of the Aircraft and its October 5, 2013 mission.  All of those records and evidence exist in this district.

13. This October 5, 2013 SIERRA NEVADA flight was conducted in the operating area of USSOUTHCOM in Miami, Florida in this district.  The contract required performance in the area of operation of U.S. Southern Command.  The press releases for this crash were all issued by USSOUTHCOM.  The SIERRA NEVADA aircraft and flight crew conducted the October 5, 2013 fatal flight in the operating area of USSOUTHCOM in Miami, Florida in this district.  Records and evidence of this relationship exist at USSOUTHCOM in this district.

14. The decedent, Martin Gonzales was assigned to United States Southern Command in Miami, Florida. Martin Gonzales reported for duty at U.S. Southern Command in this district.

15. The two surviving pilots were evacuated by the DOD to the United States for aircrew debriefing by the Joint Personnel Recovery Agency ("JPRA"). The transcripts of the aircrew debriefing are available in the U.S. At all times material, SIERRA NEVADA had access to its flight crew members during their debriefing.

16. The SIERRA NEVADA Dash 8 ISR crash is being investigated by the U.S. Air Force in the United States. The report of this crash will be conducted and issued in the United States and be available through U.S. Southern Command in this district.

17. At all times material the SIERRA NEVADA employee and pilot of the counter-narcotics contract for the Dash 8 Aircraft was responsible for the safe operation of the mission. At all times material the SIERRA NEVADA employee and pilot was not current in the Dash 8 Aircraft and was using the October 5, 2013 actual surveillance flight for currency and training when such training should have been conducted with minimum crew before an operational surveillance mission.

18. At all times NFI knew or should have known that its employee and pilot was vision impaired and could not see out of one of his eyes.

19. At all times material SIERRA NEVADA as the owner and operator of the Aircraft was responsible for the conduct of the flight and for the safety of the Aircraft and all personnel on board. SIERRA NEVADA as the owner and operator of the Aircraft was responsible for the maintenance and systems aboard the Aircraft.

20. At all times material SIERRA NEVADA was vicariously responsible for its employee/pilot who was in the cockpit on October 5, 2013. SIERRA NEVADA knew or should

have known that the failure of its employee/pilot during a night counter-narcotics surveillance flight to exercise reasonable care, maintain proper scan techniques and perform the primary pilot duty of flying the Aircraft clear of terrain could result in serious injury or death like what occurred on October 5, 2013.  SIERRA NEVADA is responsible for the unreasonable risk of harm created by the flight crew – flying the Aircraft into elevated terrain.

21. At all times material NFI was vicariously responsible for its employee/pilot.  NFI knew or should have known that the failure of its employee/pilot during a night counter-narcotics surveillance flight to exercise reasonable care, maintain proper scan techniques and perform the primary pilot duty of flying the Aircraft clear of terrain could result in serious injury or death like what occurred on October 5, 2013.  NFI is responsible for the unreasonable risk of harm created by the flight crew – flying the Aircraft into elevated terrain.

22. Because SIERRA NEVADA was the owner and operator of the Aircraft, and was the primary contractor for this contract and mission, and responsible for the conduct of the flight during all phases, SIERRA NEVADA was vicariously responsible for the failure to exercise reasonable care of any non-SIERRA NEVDA pilot, like that of the NFI employee/pilot. SIERRA NEVADA controlled and had the final authority for the safe conduct of the October 5, 2013 flight.

23. Master Sergeant Martin Gonzales's death was caused by the negligence of SIERRA NEVADA.

24. Master Sergeant Martin Gonzales's death was caused by the negligence of NFI.

25. On behalf of the Estate and its statutory survivors, Plaintiff seeks recovery of the following damages under Florida's Wrongful Death Act:

ESTATE OF MARTIN GONZALES:
- funeral and burial expenses;

8

- loss of prospective net accumulations.

MICHELLE GONZALES, surviving spouse:
- past and future lost spousal consortium, companionship, instruction, and guidance;
- past and future mental pain and suffering;

NATHAN ALEXANDER GONZALES, surviving minor child:
- past and future lost parental companionship, instruction, and guidance;
- past and future mental pain and suffering;

KAITLYN MAYA GONZALES, surviving minor child:
- past and future lost support and services;
- past and future lost parental companionship, instruction, and guidance;
- past and future mental pain and suffering.

## COUNT I
### (Negligence Sierra Nevada Corporation)

26.	At all times material, SIERRA NEVADA owed a duty to the plaintiff's decedent, Martin Gonzales to exercise reasonable care for his safety.  At all times material, it was and is reasonably foreseeable that an aircraft may be flown into elevated terrain if the pilots fail to exercise reasonable care when performing the primary duty of safely flying an aircraft.  It is also know that flying an aircraft into elevated terrain is an unreasonable risk of harm to the occupants of the aircraft.  At all times material it was reasonable foreseeable that Martin Gonzales could be seriously injured or killed in the foreseeable crash and location such as the one involved herein if SIERRA NEVADA did not exercise reasonable care in the execution of the DOD contract, conduct of the flight crew selection, conduct of the preflight procedures, and conduct of the flight portion of this mission.

27.	At all times material SIERRA NEVADA was vicariously responsible for its employee/pilot.  SIERRA NEVADA knew or should have known that the failure of its employee/pilot during a night counter-narcotics surveillance flight to exercise reasonable care, maintain proper scan techniques and perform the primary pilot duty of flying the Aircraft clear of terrain could result in serious injury or death like what occurred on October 5, 2013.  SIERRA

9

NEVADA is responsible for the unreasonable risk of harm created by the flight crew – flying the Aircraft into elevated terrain.

28. At all times material SIERRA NEVADA breached its duty to plaintiff's decedent, Martin Gonzales. Defendant, SIERRA NEVADA's negligent acts and/or omissions include:

(a) Crashing the Aircraft into terrain causing the death of MSGT Martin Gonzales;

(b) Failure to establish safety procedures for the go-no/go of a DOD counter-narcotics flight when the cockpit flight crew: (i) lacked experience for the actual mission, airframe, aircraft model, or flight environmental factors; (ii) had a poor performance record in USOUTHCOM - ISR missions of this type the decade before the October 5, 2013 crash; (iii) was not current or was inappropriately using this actual surveillance flight as flight time building training flight which may have caused cockpit overload and/or created or exacerbated the crash in its inception; (iv) may have been physically or mentally impaired from lifestyle choices immediately before the October 5, 2013 crash;

(c) Failure to retain or hire appropriately trained and experienced pilots with full physical abilities and vision for this DOD contract mission; failing to investigate the pilots' background and experience or otherwise ignoring the lack of experience and other lifestyle backgrounds of the pilots to fill seats for this DOD contract;

(d) Failure to provide adequate scenario based realistic training for the pilots actually hired and failure to conduct actual ground and flight evaluations in the flight environments encountered in these types of DOD contract surveillance missions;

(e) Failure to provide adequate scenario based realistic ground and flight training and evaluation of the pilots of the Aircraft in how to conduct the primary duties of a flight crew – that is to fly the aircraft and avoid terrain contact – when it knew or should have known that such failure to exercise reasonable care created an unreasonable risk of harm that could cause injury or death and loss of an aircraft asset;

(f) Failure to provide emergency procedures training and evaluations for the pilots on this mission;

(g) Failure to disclose and/or affirmatively hiding such aircrew lack of experience or danger signs to the United States Department of Defense and request a stand down of the mission until such time as these failures were corrected or eliminated and thereby preventing the loss of life and/or asset and mission interruption;

  (h)  Failure of the flight crew to follow known and accepted aviation safety protocols related to aircraft control and loss of control and failure to adequately train the flight crew in how to recognize and avoid loss of control;

  (i)  Disabling known safety devices or terrain proximity warning devices;

  (j)  Failing to abort the flight or abandon the surveillance track when safe aircraft flight became uncertain prior to impact, including when the pilots first perceived loss of control indications; and

  (k)  Failure to properly document flight crew training and background investigation.

29. Plaintiff's decedent was in no way responsible for the safe operation of the Aircraft, nor was he in any way himself negligent or at fault for this incident.

30. As a direct and proximate result of the defendant SIERRA NEVADA's negligence, plaintiff's decedent Martin Gonzales was killed and plaintiffs have suffered the losses and damages alleged in paragraph 25 above. The defendant SIERRA NEVADA's conduct was a proximate cause of the injuries and damages sustained by Plaintiff's decedent, the Estate and the surviving spouse and minor children.

WHEREFORE, the plaintiff demands judgment against the defendant SIERRA NEVADA CORPORATION, for compensatory damages and costs. The plaintiff further demands trial by jury on all issues triable as right to trial by jury.

## COUNT II
**(Negligence New Frontier Innovations, LLC)**

31. At all times material, NFI owed a duty to the plaintiff's decedent, Martin Gonzales to exercise reasonable care for his safety. At all times material it was and is reasonably foreseeable that an aircraft may be flown into elevated terrain if the pilots fail to exercise reasonable care when performing the primary duty of safely flying an aircraft. It is also know that flying an aircraft into elevated terrain is an unreasonable risk of harm to the occupants of the aircraft. At all times material it was reasonable foreseeable that Martin Gonzales could be seriously injured or killed in the

11

foreseeable crash and location such as the one involved herein if NFI did not exercise reasonable care in the execution of the DOD contract, conduct of the flight crew selection, conduct of the preflight procedures, and conduct of the flight portion of this mission.

32. At all times material NFI was vicariously responsible for its employee/pilot. NFI knew or should have known that the failure of its employee/pilot during a night counter-narcotics surveillance flight to exercise reasonable care, maintain proper scan techniques and perform the primary pilot duty of flying the Aircraft clear of terrain could result in serious injury or death like what occurred on October 5, 2013. NFI is responsible for the unreasonable risk of harm created by the flight crew – flying the Aircraft into elevated terrain.

33. At all times material NFI breached its duty to plaintiff's decedent, Martin Gonzales. Defendant, NFI's negligent acts and/or omissions include:

(a) Crashing the Aircraft into terrain causing the death of MSGT Martin Gonzales;

(b) Failure to establish safety procedures for the go-no/go of a DOD counter-narcotics flight when the cockpit flight crew: (i) lacked experience for the actual mission, airframe, aircraft model, or flight environmental factors; (ii) had a poor performance record in USOUTHCOM - ISR missions of this type the decade before the October 5, 2013 crash; (iii) was not current or was inappropriately using this actual surveillance flight as flight time building training flight which may have caused cockpit overload and/or created or exacerbated the crash in its inception; (iv) may have been physically or mentally impaired from lifestyle choices immediately before the October 5, 2013 crash;

(c) Failure to retain or hire appropriately trained and experienced pilots with full physical abilities and vision for this DOD contract mission; failing to investigate the pilots' background and experience or otherwise ignoring the lack of experience and other lifestyle backgrounds of the pilots to fill seats for this DOD contract;

(d) Failure to provide adequate scenario based realistic training for the pilots actually hired and failure to conduct actual ground and flight evaluations in the flight environments encountered in these types of DOD contract surveillance missions;

(e) Failure to provide adequate scenario based realistic ground and flight training and evaluation of the pilots of the Aircraft in how to conduct the primary duties of a flight crew – that is to fly the aircraft and avoid terrain contact – when it knew or

12

should have known that such failure to exercise reasonable care created an unreasonable risk of harm that could cause injury or death and loss of an aircraft asset;

(f) Failure to provide emergency procedures training and evaluations for the pilots on this mission;

(g) Failure to disclose and/or affirmatively hiding such aircrew lack of experience or danger signs to the United States Department of Defense and request a stand down of the mission until such time as these failures were corrected or eliminated and thereby preventing the loss of life and/or asset and mission interruption;

(h) Failure of the flight crew to follow known and accepted aviation safety protocols related to aircraft control and loss of control and failure to adequately train the flight crew in how to recognize and avoid loss of control;

(i) Disabling known safety devices or terrain proximity warning devices;

(j) Failing to abort the flight or abandon the surveillance track when safe aircraft flight became uncertain prior to impact, including when the pilots first perceived loss of control indications; and

(k) Failure to properly document flight crew training and background investigation.

34. Plaintiff's decedent was in no way responsible for the safe operation of the Aircraft, nor was he in any way himself negligent or at fault for this incident.

35. As a direct and proximate result of the defendant NFI's negligence, plaintiff's decedent Martin Gonzales was killed and plaintiffs have suffered the losses and damages alleged in paragraph 25 above. The defendant NFI's conduct was a proximate cause of the injuries and damages sustained by Plaintiff's decedent, the Estate and the surviving spouse and minor children.

WHEREFORE, the plaintiff demands judgment against the defendant NEW FRONTIER INNOVATIONS, LLC, for compensatory damages and costs. The plaintiff further demands trial by jury on all issues triable as right to trial by jury.

Respectfully submitted March 7, 2014

/s Newton P. Porter_____  /s_Tony Korvick_____
NEWTON P. PORTER  TONY KORVICK
(Florida Bar No. 833738)  (Florida Bar No. 768405)
nporter@porterandkorvick.com  tkorvick@porterandkorvick.com
PORTER & KORVICK, P.A.  PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208  9655 South Dixie Highway Suite 208
Miami, Florida 33156  Miami, Florida 33156
Telephone:    (305) 373-5040  Telephone:    (305) 373-5040
Facsimile:    (305) 668-9154  Facsimile:    (305) 668-9154
Attorneys for Plaintiff  Attorneys for Plaintiff